KNOBBE and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*April 6—May 10, 1932.*

For the appellants there was a brief by *Alfred E. La France,* attorney, and *J. M. Weisman* of counsel, both of Racine, and oral argument by *Mr. Weisman.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and *L. A. Tarrell* of Milwaukee, attorney for William Davis, and oral argument by *Mr. Levitan.*

FAIRCHILD, J.   Where there is credible evidence that respondent sustained an injury to his right leg sufficiently severe so as to be followed by serious consequences rendering him incapable of working, is still causing him to suffer pain, and the prognosis is a likelihood of a resulting amputation of the leg at the ankle or knee or possibly at the hip joint, the Industrial Commission is warranted in holding that the healing period, as that term is used in the statutes, has not passed even though the evidence is opposed by very strong testimony that the condition is at present fixed and that the permanent partial disability is of much less extent than would result in case of amputation.   *Winter v. Industrial Comm.* 205 Wis. 246, 237 N. W. 106.

One of the witnesses, Dr. Weber, testified to having received from respondent some history of the accident.   He also testified that his examination of the foot on November 1, 1930, showed the foot swollen, reddened, cold with very poor circulation, and very little sensation in it.   He made a comparison of this foot and leg with the left one, and on December 8th made an X-ray examination.   His diagnosis on the first examination was "that he had a trophic disturbance of his foot which involved the foot and perhaps the lower part of his leg."   This diagnosis was confirmed by a second examination and by the use of the X-ray films.   Appellant objects to the use of the history given by respondent to the doctor as a basis of his opinion, and also objects to other portions of his testimony and because the doctor conferred with Dr. Murphy, who also had examined the defendant. There were further objections to portions of the testimony but these objections cannot affect the result reached.   The portions of testimony challenged were not objected to when given.   Were they all rejected, the remaining evidence dissociated from the parts objected to is sufficient to sustain the award.   Dr. Weber, from the physical examination, formed

his opinion as to the condition of the foot and leg then existing. The history as given by Davis may have had some bearing on the question as to which of two accidents was the cause of Davis' suffering, but none as to existing conditions or as to the extent of the disability found by the doctor. The respondent himself testified to the presence of pain. This leaves the case resting on recognized results of experience and on competent evidence.

There is a basis in the evidence for the protest of appellants against the failure to hold the healing period to have been completed, and some reason exists for the earnestness with which they present their argument. It may be frankly stated that there is evidence which would sustain a finding contrary to the one made, but it did not, in the opinion of the commission, overthrow the evidence on which the interlocutory award is made. While a slight injury seems to have resulted in a serious loss, the evidence accepted by the commission as controlling at the time of the hearing shows that respondent was using his foot in rather difficult work on the day of his accident, and that since then he has not been able to use it, that pain continues, and that there is a likelihood of further serious development. The attorney general concedes that if the healing period had in fact ended on the date urged by appellants, the Industrial Commission would be compelled to fix the extent of the permanent partial disability in accordance with the provisions of sec. 102.09 (5) (a) and (fm), Stats. 1927.

The healing period is understood to mean, and is generally construed by the Industrial Commission as meaning, the period prior to the time when the condition becomes stationary. This requires the postponement of the fixing of the permanent partial disability to the time that it becomes apparent that the leg will get no better or no worse because of the injury. The healing period is expected to be temporary,

during it the employee is submitting to treatment, is convalescing, still suffering from his injury, and unable to work because of the accident. The interval may continue until the employee is restored so far as the permanent character of his injuries will permit.

The order entered is not a final award. The commission has the power, pending the final determination of the controversy before it, after any hearing to make interlocutory findings, orders, and awards, and these may be enforced in the same manner as a final award. Sec. 102.18, Stats. From the evidence presented on the hearing the commission concluded that respondent was still totally disabled, and this conclusion the circuit court properly confirmed. *McDonald v. Industrial Comm.* 165 Wis. 372, 162 N. W. 345. When the process which the injury started has been arrested the healing period will be determined. Under the circumstances here presented, the award of the Industrial Commission, which in effect gives to those interested further opportunity to examine the condition of respondent as developments occur, is not in excess of its powers. The findings are not clearly against the credible evidence or so inherently unreasonable as not to be entitled to the weight accorded to them. *Gerue v. Medford Bridge Co.* 205 Wis. 68, 236 N. W. 528; *Milwaukee v. Industrial Comm.* 160 Wis. 238, 151 N. W. 247; *Winter v. Industrial Comm.* 205 Wis. 246, 237 N. W. 106.

*By the Court.*—Judgment affirmed.